**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**IN RE AMES DEPARTMENT STORES, INC.**                  11 Civ. 4289 (JGK)
**ET AL.,**

               **Debtors.**                      <u>**OPINION AND ORDER**</u>

**CELLMARK PAPER, INC.,**

               **Appellant,**

         - against -

**AMES MERCHANDISING CORPORATION,**

               **Appellee.**

------------------------------------

      The appellant, Cellmark Paper, Inc. ("Cellmark"), appeals from a judgment entered by the United States Bankruptcy Court for the Southern District of New York (Gerber, J.), following a bench trial.  The Bankruptcy Court found that the appellee, Ames Merchandising Corporation ("Ames"), was entitled to recover as preferential transfers, pursuant to sections 547 and 550 of the Bankruptcy Code, four transfers totaling $1.9 million[1] made to Cellmark in the ninety-day preference period preceding Ames' August 20, 2001 bankruptcy filing.  Cellmark was Ames' principal supplier of paper used for promotional material.  The parties'

---

[1] Ames initially sought to recover all of the $6.7 million it transferred to Cellmark during the preference period.  However, before trial, Ames voluntarily reduced its demand to the $1.9 million transferred to Cellmark immediately preceding the petition date.

familiarity with the underlying facts, procedural history, and specification of issues for review is assumed.

I.

When reviewing a decision of the Bankruptcy Court, this Court reviews the Bankruptcy Court's conclusions of law de novo but accepts its findings of fact unless they are clearly erroneous.  See Fed. R. Bankr. P. 8013; In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004).  Mixed questions of law and fact are reviewed de novo, giving deference to the Bankruptcy Court's factual findings unless they are clearly erroneous.  In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003); In re Teligent, Inc., 326 B.R. 219, 224 (S.D.N.Y. 2005).

II.

A.

Cellmark first challenges the Bankruptcy Court's conclusion that the payments in question were preferential transfers under section 547(b) of the Bankruptcy Code.  In particular, Cellmark disputes the Bankruptcy Court's finding that Cellmark failed to rebut the statutory presumption of debtor insolvency.[2]

---

[2] Debtor insolvency is one of five elements that must be satisfied for a payment to be recoverable as a preferential transfer.  See 11 U.S.C. § 547(b).

"Insolvency is a question of fact, and the findings of the Bankruptcy Court in this regard will not be disturbed unless they are clearly erroneous." In re Roblin Indus., Inc., 78 F.3d 30, 35 (2d Cir. 1996) (citations omitted). Under section 547(f) of the Bankruptcy Code, a debtor is presumed to have been insolvent during the ninety days preceding the filing of the petition. 11 U.S.C. § 547(f); Roblin, 78 F.3d at 34. This presumption may be rebutted, but the party challenging the avoidability of the transfer bears the burden of proof to "introduc[e] some evidence that the debtor was not in fact insolvent at the time of the transfer." Roblin, 78 F.3d at 34; see also In re Vasu Fabrics, Inc., 39 B.R. 513, 516 (Bankr. S.D.N.Y. 1984). Section 101(32) of the Bankruptcy Code defines the term "insolvent," in the context of a corporate business debtor, to mean "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). Thus, insolvency is measured with reference to the "fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts." Roblin, 78 F.3d at 35. The Bankruptcy Court concluded that Cellmark had failed to rebut the presumption of insolvency because Cellmark relied only upon Ames' books and records as of the time of the bankruptcy filing, and the

3

schedules of assets and liabilities filed by Ames at the outset of the bankruptcy proceeding, all of which, the court found, listed the book value rather than the fair market value of Ames' assets and liabilities.  In re Ames Dep't Stores, Inc., 450 B.R. 24, 31-32 (Bankr. S.D.N.Y. 2011).

Cellmark does not appear to contest this finding but instead argues that the Bankruptcy Court erred as a matter of law in concluding that such evidence was insufficient to rebut the presumption of insolvency.  However, "book values are not ordinarily an accurate reflection of the market value of an asset[,]" Roblin, 78 F.3d at 36 (collecting cases), and schedules or other financial documents based on the book value of the debtor's assets have generally been deemed insufficient to rebut the presumption of insolvency, see, e.g., In re The Heritage Org., L.L.C., 413 B.R. 438, 501-02 (Bankr. N.D. Tex. 2009); In re Intercontinental Polymers, Inc., 359 B.R. 868, 873 (Bankr. E.D. Tenn. 2005) (collecting cases); In re Luster-Coate Metallizing Corp., No. 01-22764, 2004 WL 432038, at *6 (Bankr. W.D.N.Y. Feb. 3, 2004).[3]  Thus, the Bankruptcy Court did not err

---

[3] The decision of the Court of Appeals for the Second Circuit in Roblin is not to the contrary.  In Roblin, the court did not hold that a debtor's schedules based on the book value of assets were alone sufficient to demonstrate solvency or insolvency but instead held that such schedules constitute one piece of competent evidence from which inferences about insolvency can be drawn.  See Roblin, 78 F.3d at 36 ("[W]hile book values alone

4

in concluding that, because Cellmark offered no evidence of the fair market value of Ames' assets, it failed to rebut the presumption of insolvency.[4]

**B.**

Cellmark next contends that the Bankruptcy Court erred in concluding that Cellmark failed to establish the ordinary course of business defense to the preference statute. In order to establish this defense, Cellmark bore the burden of proving three elements by a preponderance of the evidence: (1) that the debt was incurred by the debtor in the ordinary course of business; (2) that the transfers were made in the ordinary course of business or financial affairs of the debtor and the transferee; and (3) that the transfers were made according to ordinary business terms. 11 U.S.C. § 547(c)(2); 11 U.S.C. §

---

may be inappropriate as a direct measure of the fair value of property, such figures are, in some circumstances, competent evidence from which inferences about a debtor's insolvency may be drawn." (citations omitted)).

[4] The Bankruptcy Court also noted that Ames' financial statements did not include $200 million of bond debt that Ames guaranteed to its corporate parent. Ames, 450 B.R. at 32. Cellmark contends that it was error to evaluate the amount of this debt at face value rather than actual value. However, this is beside the point, given that the Bankruptcy Court's holding was not based on the book value of the assets and liabilities but rather on the absence of evidence of the fair market value of Ames' assets. See id. at 31-32.

547(g).[5]  The Bankruptcy Court found, as a mixed question of law and fact, that the second element was not met — namely, that the transfers were not made in the ordinary course of business.[6] Ames, 450 B.R. at 35.  Mixed questions of law and fact are reviewed de novo, with embedded findings of fact reviewed for clear error.  Vebeliunas, 332 F.3d at 90; Teligent, 326 B.R. at 224.

The Bankruptcy Court's conclusion that the transfers in question were not made in the ordinary course of business was correct and supported by the evidence as a whole.  The Bankruptcy Court applied several factors relied upon by courts in this Circuit in assessing whether a given transfer was made in the ordinary course of business, such as the prior course of dealings of the parties, the amount of the payment, the manner of the payment, and whether the payment was the result of any

---

[5] As the Bankruptcy Court noted, section 547(c)(2) of the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  However, because the amendments only apply to bankruptcy filings after October 17, 2005, and Ames filed for bankruptcy in 2001, the pre-amendment version of section 547(c)(2) applies.  See Ames, 450 B.R. at 32 n.43.  In the amended version of section 547(c)(2), a creditor need only prove, in addition to the first element, that either the second or third element are met, rather than both.  See 11 U.S.C. § 547(c)(2).

[6] The parties did not dispute the first element, and the Bankruptcy Court assumed without deciding that the third element was met.  Ames, 450 B.R. at 32, 35 n.53.

pressure by the creditor or favoritism by the debtor.  See <u>Ames</u>, 450 B.R. at 32 & n.45 (citing <u>In re 360networks (USA) Inc.</u>, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005) (collecting cases)).  The Bankruptcy Court found that the transfers at issue were unique in terms of the manner and timing of payment, and that they deviated from the baseline of past payments between the parties.  In particular, the Bankruptcy Court noted that Invoice 70 — an invoice for close to $1.4 million that was paid in two payments — differed from past payments in that it was not issued in numerical sequence, was paid in partial payments, and was sent out and paid earlier than corresponding invoices from previous years.  <u>Ames</u>, 450 B.R. at 29, 33-34.  The Bankruptcy Court found particularly persuasive the fact that Invoice 70 had been manually generated, which was unprecedented in the parties' three-year relationship and which required both Cellmark and Ames to override their computerized systems in order to generate and to pay the invoice.  <u>Id.</u> at 29-30, 33.  The Bankruptcy Court found that the explanations of Cellmark's witnesses for the unique nature of Invoice 70 were not credible and concluded that the invoice had been manually generated for the purpose of obtaining payment from Ames earlier than usual and before the Petition Date.  <u>Id.</u> at 33-34.

   The Bankruptcy Court also found evidence of favoritism by the debtor, noting that Ames had stopped using an automated

7

accounts payable system during the preference period and instead had begun making individualized decisions about payment based on the identity of the vendor and the needs of Ames' business.  Id. at 27, 34.  These decisions, the Bankruptcy Court found, were influenced by the actions of Eugene Bankers, Ames' Senior Vice President of Marketing and Advertising, who repeatedly inquired about the status of payments to Cellmark and made comments about the importance of Cellmark being paid.  Id. at 27-28, 34-35.  Therefore, the Bankruptcy Court correctly concluded that, on balance, the relevant factors weighed against a finding that the transfers in question had been made in the ordinary course of business.

Cellmark, however, takes issue with several of the Bankruptcy Court's factual findings.  In particular, Cellmark contends that the Bankruptcy Court erred in finding that the explanations of Cellmark's witnesses for the manual preparation of Invoice 70 were not credible and in finding that Invoice 70 had been manually generated for the purpose of obtaining early payment.  However, there was plainly significant factual support for these conclusions.

First, as the Bankruptcy Court found, the explanation provided by two of Cellmark's witnesses for the manual preparation of Invoice 70 — namely, that Ames preferred to have a single invoice for each printing event, which could not always

8

be accomplished through Cellmark's computerized system[7] — was inconsistent with the deposition testimony of one of these witnesses and with documentary evidence indicating that Cellmark had sent multiple invoices per printing event to Ames in the past. Ames, 450 B.R. at 33-34. Based on these facts, it was not clearly erroneous for the Bankruptcy Court to find that these explanations were not credible, especially in light of the deference afforded to the Bankruptcy Court's credibility determinations. See, e.g., In re Boyer, 328 F. App'x 711, 716 (2d Cir. 2009) (summary order); In re Pisculli, 426 B.R. 52, 59 (E.D.N.Y. 2010), aff'd 408 F. App'x 477 (2d Cir. 2011) (summary order).

Second, the Bankruptcy Court's conclusion that Invoice 70 had been manually generated for the purpose of obtaining early payment was also not clearly erroneous, in light of the unique aspects of the invoice's timing and manner of payment and the court's finding that no credible explanation for these unique features had been provided. Cellmark emphasizes that manually-

---

[7] Cellmark claims that one of these witnesses — Dominick Merole, Cellmark's Credit Manager — never gave testimony to this effect at trial. However, in both Merole's trial affidavit and on cross-examination at trial, he does state that Invoice 70 was manually generated because of the need to avoid multiple invoices per printing event. (Dominick J. Merole Aff. at ¶¶ 13-15, In re Ames Dep't Stores, Inc., 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Nos. 01-42217, 03-06261), ECF No. 64.)

generated invoices were also prepared after Ames' bankruptcy filing, which, according to Cellmark, demonstrates that the mere fact that Invoice 70 was manually prepared is not indicative of any motive of collection pressure.  However, it was reasonable for the Bankruptcy Court to attach little weight to these additional invoices, given that they did not relate to the pre-preference or preference period and did not deviate as significantly from the parties' prior methods of payment as did Invoice 70.  Ames, 450 B.R. at 33 n.47.  Thus, the Bankruptcy Court's factual findings with respect to Invoice 70 were not clearly erroneous.

Cellmark further contends that the Bankruptcy Court erred as a matter of law in attaching too little significance to the court's own finding that Cellmark did not engage in any collection pressure with respect to the transfers at issue.  Id. at 28 & n.16.  However, the absence of creditor pressure is only one factor to be considered, and the Bankruptcy Court concluded that "the other factors — the lump sum or partial payments, the manual preparation of the invoice, and the fact that the invoice was out of sequence . . . outweigh [this] single factor on which Cellmark bases its entire ordinary course of business defense."  Id. at 34.  This conclusion was not erroneous.  Cellmark also asserts that the Bankruptcy Court should not have considered evidence of debtor favoritism by Ames but rather should only

10

have analyzed whether Cellmark, the creditor, engaged in collection pressure with respect to the transfers at issue. However, Cellmark does not cite any case holding that it is error for a Bankruptcy Court to consider both debtor and creditor behavior in analyzing the ordinary course of business defense, and, indeed, several courts have done so.  See, e.g., In re Spirit Holding Co., Inc., 153 F.3d 902, 905 (8th Cir. 1998) ("The relevant legislative history . . . states that the ordinary-course-of-business exception discourages unusual action by either the debtor or his creditors." (internal quotation marks and citation omitted)); In re CM Holdings, Inc., 264 B.R. 141, 154 (Bankr. D. Del. 2000) ("[I]t is not only undue pressure by creditors that might result in a finding [of] . . . preferential transfers but unacceptable debtor favoritism as well . . . .").

     Finally, Cellmark raises a host of other purported legal errors, asserting that the Bankruptcy Court erred by attaching too little or too much weight to certain pieces of evidence and in relying upon certain factors that, according to Cellmark, are alone insufficient to defeat the ordinary course of business defense.  However, the Bankruptcy Court did not rely on one factor or one piece of evidence in isolation in determining that the transfers were not made in the ordinary course of business

but instead correctly concluded that the factors and evidence as a whole weighed in favor of such a finding.

Accordingly, the Bankruptcy Court did not err in finding that Cellmark failed to show by a preponderance of the evidence that the transfers in question were made in the ordinary course of business.

### III.

Cellmark next challenges certain discovery-related and evidentiary rulings of the Bankruptcy Court, as well as the Bankruptcy Court's denial of its motion for a new trial.  These rulings are reviewed for abuse of discretion.  Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006); Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004); Luciano v. Olsten Corp., 110 F.3d 210, 217 (2d Cir. 1997).

### A.

Cellmark first contends that the Bankruptcy Court abused its discretion by declining to deem admitted Cellmark's requests for admissions concerning the absence of creditor pressure by Cellmark, despite Ames' significant delay in responding to these requests.  While Rule 36(a)(3) of the Federal Rules of Civil Procedure[8] provides that a request for admission shall be

---

[8] Federal Rule of Civil Procedure 36 is applicable in bankruptcy proceedings.  See Fed. R. Bankr. P. 7036.

12

admitted if not responded to within thirty days, a court retains discretion under Rule 36(b) to permit the withdrawal or amendment of such an admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36.  The Bankruptcy Court found that deeming the requests admitted was not warranted because, while Ames' responses to the requests had been untimely and insufficient, Cellmark suffered no prejudice "other than having to prove the entirety of its case on the merits . . . ."  (Hr'g Tr., 9, Apr. 13, 2009.)  Moreover, the court found, admitting the requests would detract from a resolution of the case on the merits.  (Hr'g Tr., 10, Apr. 13, 2009.)  This conclusion was not an abuse of discretion.[9]  See Garden City Boxing Club, Inc. v. Rice, No. 04 Civ. 3100, 2005 WL 613249, at *4 (S.D.N.Y. Mar. 14, 2005) ("Permitting a party to dispute a central issue in an action may serve the presentation of the merits of an action."); Sec. Ins.

---

[9] The fact that Ames did not file a formal motion to withdraw the admissions does not compel a contrary result.  While some courts have refused to withdraw admissions in the absence of a formal motion, it was not an abuse of discretion for the Bankruptcy Court not to require such a motion in this case.  See, e.g., Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 153-54 (6th Cir. 1997); In re Van Dyck/Columbia Printing, 289 B.R. 304, 318 (D. Conn. 2003).


Co. of Hartford v. Trustmark Ins. Co., 217 F.R.D. 296, 298 (D. Conn. 2002) ("The prejudice contemplated by Rule 36(b) is not merely that the party obtaining the admission must, as a consequence of the withdrawal, prove the matter admitted . . . .").

It was also not an abuse of discretion for the Bankruptcy Court to deny Cellmark's motion for sanctions.  A court has "broad discretion" in determining whether to impose sanctions for discovery abuses and any such sanctions "must be just and commensurate" with the abuse in question.  Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009), aff'd 379 F. App'x 4 (2d Cir. 2010) (summary order).  Cellmark sought sanctions in the form of an award of attorney's fees and an entry of judgment in Cellmark's favor.  "The sanction of dismissal is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions."  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) (internal quotation marks and citations omitted).  The Bankruptcy Court did not abuse its discretion in concluding that such a severe sanction was not warranted here, especially in view of its findings that Ames' conduct was not intentional or deceptive and that Cellmark suffered no prejudice other than an "inability to secure a windfall ruling through default admissions gained from

a tardy response to the [requests for admission]."  (Hr'g Tr., 12, Apr. 13, 2009.)  Nor, in light of these considerations, was it an abuse of discretion to decline to impose sanctions in the form of attorney's fees.  Thus, the Bankruptcy Court did not abuse its discretion in refusing to deem the requests for admissions admitted or in denying Cellmark's motion for sanctions.

## B.

Cellmark also contends that the Bankruptcy Court abused its discretion in making certain evidentiary rulings.

First, Cellmark contends that the Bankruptcy Court improperly restricted Cellmark's ability to present rebuttal evidence.  At both the close of trial and during a later status conference, Cellmark requested permission to present further testimony by one of its witnesses, Mr. Spain, to rebut cross-examination indicating that Cellmark had issued multiple invoices per printing event in the past.  The Bankruptcy Court allowed Cellmark to renew its arguments for such rebuttal evidence in its post-trial briefing.  In its post-trial briefing, Cellmark presented an offer of proof with respect to the testimony of two proposed rebuttal witnesses — Mr. Spain and an additional witness not previously brought to the attention of the court — and also attached several exhibits not presented at trial and, according to Cellmark, not produced in discovery,

15

including manually-generated invoices prepared after Ames' bankruptcy filing.  (Def.'s Post-Trial Mem. of Law ("Def.'s Post-Trial Mem.") at 29-32 & Ex. B, In re Ames Dep't Stores, Inc., 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Nos. 01-42217, 03-06261), ECF No. 38.)  While the Bankruptcy Court never ruled on the request for rebuttal testimony by the two witnesses, the court did consider the additional invoices attached as exhibits and ultimately found them unpersuasive.  Ames, 450 B.R. at 33, n.47.  A trial court has "wide discretion in determining whether to permit evidence on rebuttal."  United States v. Tejada, 956 F.2d 1256, 1266 (2d Cir. 1992).  It was plainly not an abuse of this discretion for the Bankruptcy Court to decline to allow additional testimony from Cellmark's witnesses, especially given that the Bankruptcy Court did consider the invoices submitted in the post-trial briefing, which were a key subject of the proffered testimony of these witnesses.  (Def.'s Post-Trial Mem. at 29-32.)

Second, Cellmark argues that the Bankruptcy Court erred in allowing Ames' witnesses to testify about statements allegedly made to them by Cellmark or Ames employees pertaining to alleged pressure by Cellmark.  However, the Bankruptcy Court indicated that it would not consider the alleged statements for their truth and therefore those statements were not hearsay.  See Hr'g Tr., 7-9, 12-13, July 29, 2009; Fed. R. Evid. 801(c).  Moreover,

16

the court indicated that, while it would admit the testimony, the parties could argue its relevance. (Hr'g Tr., 7-9, 13, July 29, 2009.) Ultimately, the Bankruptcy Court did not find that any pressure was exerted by Cellmark. Ames, 450 B.R. at 28 & n.16. Cellmark has failed to show that the Bankruptcy Court relied on the challenged testimony to Cellmark's detriment. The Bankruptcy Court's evidentiary rulings were not an abuse of discretion.

### c.

Finally, Cellmark claims that the Bankruptcy Court abused its discretion in denying Cellmark's motion for a new trial. This motion was based exclusively on the proposed testimony of Thomas Powell, a print buyer at Ames, who, Cellmark claims, would have corroborated Cellmark's witnesses' explanations for why Invoice 70 was manually generated. However, the Powell affidavit proffered by Cellmark merely reiterated explanations that the Bankruptcy Court previously found to be unpersuasive and inconsistent with the documentary evidence — namely, that Ames preferred to receive a single invoice for each printing event. (Thomas E. Powell Aff. ("Powell Aff.") at Ex. A ¶ 5, In re Ames Dep't Stores, Inc., 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Nos. 01-42217, 03-06261), ECF No. 46.) Nor does the Powell affidavit shed light on the other aspects of Invoice 70 that the Bankruptcy Court found troubling. The affidavit states that

Powell could not recall why the timing of Invoice 70 differed from that of other payments and that Powell was not involved in Ames' payment process for paper vendors. (Powell Aff. ¶¶ 6-7.) Thus, it was reasonable for the Bankruptcy Court to conclude that this new testimony would not impact its earlier decision and to deny the motion for a new trial on this basis. (Hr'g Tr., 27-31, May 19, 2011.) See LiButti v. United States, 178 F.3d 114, 119 (2d Cir. 1999) (party seeking new trial on the basis of newly-discovered evidence must "demonstrate a probability that the newly discovered evidence would change the outcome").

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the judgment of the Bankruptcy Court is **affirmed**. The Clerk is directed to close this case and to close all open motions.

SO ORDERED.

Dated:   New York, New York
         February 28, 2012

                                        John G. Koeltl
                                        United States District Judge